UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMAR THOMAS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 16-7641 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　Plaintiff filed this action on October 13, 2016. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 10, 12.) On June 20, 2017, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

　　　Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## PROCEDURAL BACKGROUND

On June 7, 2013, Thomas filed an application for supplemental security income alleging an onset date of January 17, 1993. Administrative Record ("AR") 9. The application was denied initially and on reconsideration. AR 9, 45, 55. Thomas requested a hearing before an Administrative Law Judge ("ALJ"). On May 7, 2015, the ALJ conducted a hearing at which Thomas, his uncle and a vocational expert ("VE") testified. AR 24-35. On June 15, 2015, the ALJ issued a decision denying benefits. AR 6-20. On August 19, 2016, the Appeals Council denied the request for review. AR 1-3. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Thomas has the severe impairments of learning disorder; depressive disorder; and psychotic disorder. AR 11. He does not meet or equal a listing. AR 12-13. He has the residual functional capacity ("RFC") to perform medium work except that he can stand or walk for six hours in an eight-hour workday with customary breaks. He can understand and remember tasks; sustain concentration and persistence; socially interact with the general public, coworkers and supervisors; and adapt to work place changes frequently enough to perform unskilled and low stress jobs that require simple instructions. AR 14. He has no past relevant work, but there are jobs that exist in significant numbers in the national economy that he can perform such as hand packager, machine packager and industrial cleaner. AR 18-19.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

## C. Listing 12.05B

Thomas contends the ALJ erred by finding that he did not meet or equal Listing 12.05B.

At step three of the sequential analysis, the claimant bears the burden of demonstrating that his impairments are equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Listing 12.05 requires evidence of "significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning and

manifestion . . . before age 22."[2] 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.05. The required level of severity is satisfied when subparagraph A, B, C or D is also met. *Id.* Under subparagraph B, an individual is disabled if he has a "valid verbal, performance, or full scale IQ of 59 or less" and can demonstrate or support onset before age 22. *Id.*; *Potts v. Colvin*, 637 Fed. Appx. 475, 476 (9th Cir. 2016). "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.00(D)(6)(c); *see Garcia v. Comm'r*, 768 F.3d 925, 931 (9th Cir. 2014).

Although the ALJ found that Thomas did not meet or equal any listing, the ALJ's decision did not make findings specific to Listing 12.05 and the claimant's attorney did not raise any listings at the hearing. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant first presents evidence in an effort to establish equivalence." *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)). When the claimant presents such evidence, "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

On June 24, 2010, at the age of 22, Thomas was given a psychological evaluation by a psychologist, Dr. Ardebili. AR 152-59. Thomas "was very aggressive, frustrated and temperamental during the evaluation and interrupted all the testing with poor effort." AR 154. His intellectual functioning was "in the low average range." AR 155. There was evidence of psychomotor retardation.

---

[2] The Ninth Circuit recently noted that the court applies the regulations in place when the ALJ's decision became final, not the revised Listing of Impairments that went into effect on January 17, 2017. *Wood v. Berryhill*, 2017 U.S. App. LEXIS 10985, *2 n.1 (9th Cir. June 21, 2017).

5

His memory, concentration, insight and judgment were impaired. *Id.* His IQ scores were Verbal Comprehension 51, Perceptual Reasoning 51, Working Memory 55, Processing Speed 50 and Full Scale 44. AR 157. Dr. Ardebili concluded that Thomas' "[o]verall intellectual capacity may be slightly higher than shown on psychometric testing." AR 158. Thomas was able to understand, remember and carry out simple instructions without difficulty. *Id.*

On February 21, 2013, Dr. Jordan administered a psychiatric evaluation to Thomas, then 25 years old. AR 194-200. Dr. Jordan found that Thomas' primary psychiatric problem involved "highly manipulative personality disorder." AR 194. He "appeared to fabricate speech impairments that were inconsistently present during the evaluation." *Id.* He claimed cognitive impairments, depression and hallucinations, but there was "no objective evidence of any haluucination during this evaluation, no objective evidence of any significant sustained depression or any other sustained disturbance of affect." *Id.*

Dr. Jordan found no evidence of any significant cognitive impairment. "The claimant appeared to fabricate severe mental retardation, the claimant reporting that he could not comprehend the simplest of questions and did not understand simple expressions such as emotional feelings or thinking. However, the claimant later revealed that he understood the expressions very well and there was no objective evidence of any significant sustained intellectual limitations." AR 195. Thomas was uncooperative during the evaluation and his psychomotor activity was within normal limits. AR 197. His thought process was linear and goal directed, with no flight of ideas, racing thoughts or loosening of associations. Dr. Jordan found it difficult to assess Thomas' memory functioning because of his fabrications of symptoms, but Thomas was able to remember two out of three items after three minutes. His response to concentration-related tasks was "a typical response of an individual that is fabricating mistakes." AR 198.

Dr. Jordan reviewed Dr. Ardebili's report and made a detailed comparison between Thomas' conduct and performance before Dr. Ardebili and the current evaluation. AR 195-96. For example, Dr. Ardebili reported that Thomas' speech was fluent and coherent. By contrast, during Dr. Jordan's evaluation, Thomas attempted to fabricate severe speech impediments, such as stammering and slurring, but did not sustain them on a consistent basis. AR 195. Whereas Thomas reported to Dr. Jordan that green men were talking to him through the evaluation and for the past 10 years, Dr. Ardebili reported nothing about green men. AR 195-96. As another example, whereas Thomas denied ever being hospitalized for psychiatric illness to Dr. Ardebili, Thomas reported being hospitalized as a teen for a suicide attempt to Dr. Jordan. AR 197. Dr. Jordan also contrasted the results on cognitive functioning. AR 195. In addition, Dr. Jordan reviewed Thomas' treating records and noted inconsistencies between those records and the current evaluation. *Id.*

The Ninth Circuit, in an unpublished decision, stated: "We do not doubt that an ALJ can decide that an IQ score is invalid. The regulation's inclusion of the word 'invalid' in Listing 12.05C makes the ALJ's authority clear." *Thresher v. Astrue*, 283 Fed. Appx. 473, 475 (9th Cir. 2008); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a) ("[S]ince the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."); *see also Wedge v. Astrue*, 624 F. Supp. 2d 1127, 1131-35 (C.D. Cal. 2008) (summarizing factors from out-of-circuit cases, such as evidence showing high possibility of malingering and daily activities inconsistent with IQ scores); *Vasquez v. Astrue*, 2012 WL 590019, at *6-7 (C.D. Cal. Feb. 21, 2012) (unpublished) (same).

The ALJ found evidence of malingering and found that Thomas attempted to "fabricate mistakes on concentration, cognitive, and memory tasks."[3] AR 13, 17. The ALJ noted not only Dr. Jordan's report but also additional evidence of Thomas' inconsistent statements. The ALJ found that Thomas' daily activity in playing video games and his taking college level courses were inconsistent with his claimed mental limitations. AR 17-18, 139, 179. The ALJ may rely on evidence of malingering, higher education and participation in activities inconsistent with the IQ score. *Wedge*, 624 F. Supp. 2d at 1131-35; *see also Saari v. Berryhill*, 2017 U.S. Dist. LEXIS 65135, *8-*10 (D. Or. Apr. 28, 2017). Although it may have been preferable for the ALJ to discuss Dr. Ardebili's report directly rather than discuss only Dr. Jordan's report (which discussed and compared Dr. Ardebili's report), the ALJ's findings were adequate in this case and any error was harmless.[4] *See Lewis*, 236 F.3d at 512-13 (finding that ALJ's omissions in evaluating listed impairment of epilepsy "might have required reversal or remand under *Marcia* were it not for the ALJ's finding that Lewis's seizures were largely a result of noncompliance with his prescribed therapy"); *Id.* at 513 ("*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading "Findings."); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("But our cases do not require such an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

---

[3] Interestingly, during his internal medicine evaluation, Thomas was described as "very pleasant," "cooperative" and "oriented." AR 189. Thomas' medical records indicate he lives with his girlfriend and three children, including a new baby. AR 258. Thomas was alert and oriented, with mood and affect appropriate for situation. No depression or anxiety issues. AR 260-61.

[4] The state agency review physicians did consider Listing 12.05. AR 42, 52.

Thomas argues that the ALJ failed to fully and fairly develop the record and should have ordered additional IQ testing and consultative examination. The ALJ noted that Dr. Jordan found it difficult to assess Thomas' mental functioning due to malingering and fabrication of symptoms. AR 16, 195, 199. The state agency review physicians made the same observation. AR 42, 52. Dr. Ardebili found that Thomas was uncooperative, his effort was poor and he did not want to continue the testing. AR 154. Although Dr. Ardebili did not state one way or another whether the IQ scores were valid or invalid, Dr. Ardebili found that Thomas' intellectual functioning was in the low average range, which appears significantly higher than his full scale IQ score. AR 155, 158. The ALJ did not err in failing to order another psychological evaluation and another set of IQ scores. *See Roberson v. Berryhill*, 2017 U.S. Dist. LEXIS 46934, *15 (C.D. Cal. Mar. 29, 2017).

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: June 26, 2017

_____
ALICIA G. ROSENBERG
United States Magistrate Judge